[*Civ. No. 5494. First Appellate District, Division One.*—August 19, 1927.]

FARMERS AND MERCHANTS NATIONAL BANK OF LOS ANGELES (a Banking Corporation), Respondent, v. CLARA B. ZIEGLER et al., Appellants.

Francis D. Adams and Earl Curtis Peck for Appellants.

Lawler & Degnan for Respondent.

CAMPBELL, J., *pro tem.*—This is an action brought by plaintiff to recover from defendants $11,500, together with interest and attorney's fees, alleged to be due and owing on a certain promissory note and assigned to Farmers and Merchants National Bank by F. C. Trickey, the payee named in the note, which assignment is alleged to have been made before maturity and in the usual course of business. The complaint is in the usual form of an action on a promissory note. The answer denies that the note was assigned before maturity in the usual course of business, and alleges that the note has been fully satisfied and discharged. And as a

further and separate answer and defense, the defendants allege that by reason of the failure of F. C. Trickey, the payee in the note, to pay the rent for certain garage premises according to the terms of his lease, and his failure to keep the garage open day and night as a first-class garage, such lease and leasehold have been abandoned and the consideration of the note for $11,500 has wholly failed.

The defendants as owners, on or about December 1, 1921, leased to one Homer A. Brunell certain real property for a period of approximately nine years at a rental running from $160 per month to $210 per month for the last five years of the lease, upon which property Brunell conducted a garage; the lease by its terms was assignable without the necessity of the owner's consent; thereafter, on or about December 6, 1921, the lease, together with the machinery and equipment contained in the garage, were acquired by F. C. Trickey; on December 23, 1921, F. C. Trickey sold to defendant George J. Ziegler his interest in the Brunell lease, together with the equipment, for a consideration of $11,500, the transaction being consummated by defendants George J. Ziegler and Clara B. Ziegler, his wife, and F. C. Trickey in the following manner: George J. Ziegler, Clara B. Ziegler, and F. C. Trickey, on December 23, 1921, went to the plaintiff bank; there Mr. Lemmon, an officer of the bank, at their request made out a promissory note in the sum of $11,500, payable to F. C. Trickey on or before one year after date, without interest, which was signed by the defendants George J. Ziegler and Clara B. Ziegler, and delivered to F. C. Trickey, who thereupon indorsed the note and placed it with the plaintiff bank for collection, and as collateral security for such note there was left with the bank an assignment of the Brunell lease and a bill of sale of the equipment of the garage, to be delivered to the Zieglers upon payment of the note. Immediately thereafter defendants, for a rental of $300 per month, leased the garage premises and the equipment therein contained to Trickey for the period of one year. The day following the execution and delivery of the note and consummation of the transaction at the bank, according to the testimony of Trickey, he, Trickey, went to Ziegler's place of business, and there signed a brief agreement to keep the garage open day and night for the period of one year, for which period he had leased the premises

from the Zieglers. According to the findings of the trial court, and which find support in the evidence, it was never the intention of the parties that this agreement should in any way be connected with the payment of the $11,500 promissory note.

Prior to December 23, 1921, F. C. Trickey had borrowed from the plaintiff bank $5,000 for the purpose of acquiring the Brunell lease on the garage premises and the garage equipment. On January 26, 1922, Trickey assigned and transferred the Zieglers note, then being held for collection, to the plaintiff bank as security for his indebtedness to the bank, which at that time had been reduced to the sum of $4,000, and afterward, on February 3, 1922, reduced to $3,000, and at the time of the trial of this action this amount was wholly unpaid. This note for $11,500 executed by defendants is the note sued on here.

Appellant urges as grounds for reversal of the judgment the following assignments: (1) That the finding that the note was indorsed to plaintiff before maturity and without notice of defendants' defense against the payee is not supported by the evidence; (2) That the uncontradicted evidence shows defendants have a defense as against the payee of said note; (3) That the breach of the terms of defendants' exhibit "A" (agreement to keep the business open day and night) on the part of the payee is a defense to the note as against plaintiff; (4) That the evidence shows that it was the intent of the maker and payee of said note that said note was evidence of payment to be made by defendants only in the event payee performed the terms of the contemporaneous agreement and was not intended to be negotiable; (5) That plaintiff should not recover more than the amount unpaid on the Trickey note.

Appellants' defense as against Trickey, the payee, as gleaned from their answer is that, as a result of Trickey's alleged breach of the agreement to keep the garage open day and night and his failure to pay rent under his one-year lease, the consideration for the promissory note sued upon has wholly failed and the property described in the bill of sale and the lease have become valueless. The court on this issue specially found "it is not true that the consideration for said note for Eleven Thousand Five Hundred Dollars ($11,500.00) has wholly, or at all failed; nor is it true that

the property or lease described in said bill of sale have become valueless. On the contrary, the court finds that the fair rental value of said premises on December 22, 1921, was at least Two Hundred Dollars ($200.00) a month, and at the date of the trial was at least Four Hundred Dollars ($400.00) a month; that the rental paid under the Brunell lease was substantially less than the amounts aforesaid; that one of the purposes of the sale of said lease, garage business and equipment, was the acquisition by the Zieglers of the Brunell lease and the attendant right of leasing the premises for a rental in excess of the rental therein provided for; that after such acquisition by the sale aforesaid, said Zieglers did rent the premises to one Lamb for a period of five years at a rental in excess of the amount required to be paid for the like period under the Brunell lease. There was no testimony offered by the defendants that the tools or equipment constituting a part of the subject matter of the sale by Trickey to Ziegler, was of no value, hence the court finds that the allegation to that effect is not true.''

Appellants have not directed our attention to any testimony, nor have we found any in the record, as to the value or lack of value, of the tools or equipment. As to the finding that the consideration for the note has not wholly or at all failed—that the lease is of greater value than it was when the lease and tools and equipment were purchased by appellants from Trickey, there is ample evidence in the record to support such finding. The witness W. W. Scott, a real estate broker, who had been engaged in the business of rentals, leases, and general real estate in Los Angeles since 1911, testified that the garage ought to be worth around $400 or $450 a month and that the rental value would be four times what it was in 1921, and the property was leased on October 24, 1922, during the one-year term of the Trickey lease by Mrs. Ziegler to Mr. Lamb for a term of five years at the rental of $150 a month for the first eighteen months, then $200 a month for the next eighteen months, and $225 a month for the remaining twenty-four months of the term. As to the payment of the rent under the lease, the evidence shows that Trickey, when he took possession under the lease made to him, at the time he sold the Brunell lease to the Zieglers, paid two months rent of the one-year term in advance, which payments were credited on the first and last

months, and that on January 10, 1922, within a month from the execution of the lease, Trickey, as alleged in defendants' answer, entered into an agreement in writing with one C. T. Mosley, whereby Mosley was substituted in place of Trickey as lessee in the lease and agreed to carry out its terms and to give a bond in the sum of $2,000 for the faithful performance of the agreement and the return of all property in good condition, and it is further alleged in defendants' answer that the defendants "do hereby agree to the within agreement and do hereby accept the said C. T. Mosley as tenant of the said premises for the term of the said lease expiring January, 1923." It is true that Mr. Lemmon testified that he was sure he read exhibit "A," the agreement to keep the garage open day and night, dated January 1, 1922, when it was left at the bank; that he recalled several sheets were left unfastened and he fastened them together, but that he knew nothing about the transaction between Mr. Ziegler and Mr. Trickey; and Victor H. Rosetti, an officer of the bank, testified that he saw exhibit "A" on January 26, 1922, but that was subsequent to the date defendants accepted Mosley in place of Trickey. Whatever obligation Trickey was under regarding the terms of his one-year lease naturally ceased on January 10, 1922, when the Zieglers accepted Mosley as tenant in place of Trickey. It is difficult to understand under such state of facts, what credit or offset, if any, defendants have against the note, even as against Trickey, the payee, and we cannot agree with appellant that the uncontradicted evidence shows that defendants have a defense to the note as against the payee. We do not disagree with appellants' statement of the law that "One who holds a note, invalid in the hands of the payee, as collateral security for a pre-existing debt, can recover from the maker only the amount of the indebtedness due by the payee," but where a negotiable note is transferred in good faith, for value, before maturity, the holder is not subject to any counterclaim or offset existing against any prior party. This is the rule of the code as well as of the lawmerchant, and no provision of the code in regard to set-offs and counterclaims affects the negotiability of commercial paper or the right of such *bona fide* transferees. (19 Cal. Jur. 1013, sec. 162, and cases cited.) This principle is not disputed by appellants, their claim being that the evidence

shows that exhibit "A," containing the agreement on the part of the payee to keep the garage open day and night, was contemporaneous to the note, a part of the same transaction, was deposited contemporaneously with the note, and is sufficient knowledge to put respondent on notice of the terms of the lease exhibit "B."

The court found: "It is not true that at the time of said sale, or as part of the agreement thereof, it was agreed and understood between the defendant George J. Ziegler and F. C. Trickey that for one year subsequent to December 23, 1921, or for any other period, said F. C. Trickey would cause said garage business to be conducted in a first-class manner or that he would keep said garage open during said or any period, day and night," and that "It is not true that said lease was executed or delivered to induce the execution or delivery of said promissory note of $11,500, or the possession of the property aforesaid by said George J. Ziegler, and it is not true that such lease constituted any part of the sale heretofore found."

If there is substantial evidence to support these findings the judgment must be affirmed, and reference to the remaining points urged by appellants is rendered unnecessary.

According to the testimony of the witness F. C. Trickey the defendants and himself went to the bank and were referred to Mr. Lemmon. That he told Mr. Lemmon that he had sold a certain garage and a nine-year lease to Mr. and Mrs. Ziegler for $11,500, and that they were going to give him their note for the amount due in one year. That he told Mr. Lemmon that he owed the bank some money and wanted to leave the note with the bank in escrow until the note is paid as collateral to his note. Mr. Lemmon said, "You don't mean escrow, you mean for collection," and Trickey said, "Yes, that is what I mean. I want to leave it for collection"; "they (referring to the Zieglers) are going to leave the bill of sale to the garage and this nine-year lease as collateral to this note until it is paid." Trickey had the nine-year lease and bill of sale with him at the time. Mr. Lemmon wrote the note and when he came to the place where they write in the collateral Trickey showed him these papers. Mr. and Mrs. Ziegler signed the note and Mr. Lemmon put a stamp indorsement on the back of the note and Trickey signed his name under it. Mr. Lemmon then

gave Trickey a receipt for the note. Nothing was said to anyone at the bank regarding the details of the sale. Mr. and Mrs. Ziegler were present at the bank window all the time. The bill of sale did not have appended to it a list of the garage equipment and Trickey gave Mrs. Ziegler the bill of sale he received from Brunell and she took it home to copy the list of the equipment and the next day, December 24th, Trickey went to the Zieglers' place of business and there signed an agreement to keep the garage open day and night, and Mrs. Ziegler had made the copies of the garage equipment, and Mrs. Ziegler, Trickey, and Mr. Stone, driving the car, went to the bank and delivered a copy of the equipment of the garage to Mr. Lemmon, which was attached to the bill of sale.

After they left Mr. Lemmon's window the day the note was signed they went to a little round table in the bank and executed the one-year lease to Trickey. Mr. Ziegler said, "I am glad to get that lease back. (Brunell lease.) We were tied up in a bad lease there. And I expect to pay that off (Trickey note) in about thirty days; I have got a deal pending where I expect to get the money."

The facts testified to by Trickey as occurring at the bank window are in the main corroborated by Lemmon and who testified that he knew nothing about the transaction between Ziegler and Trickey other than that related as occurring at his window at the bank; that he did not learn of them at any time thereafter prior to the institution of the suit by Mr. Ziegler.

Appellant has cited cases and directed our attention to certain sections of Ruling Case Law to sustain his contentions, but the questions presented here, as we view them, are questions of fact and not of law, and, therefore, if there is substantial evidence in the record to sustain the findings of the trial court, under the well-established rule, the judgment will not be disturbed on appeal.

We are of the opinion that the evidence amply sustains the findings and the judgment is therefore affirmed.

Knight, Acting P. J., and Cashin, J., concurred.